**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-CR-00100 (CRC)** |
| v. | : | |
| | : | |
| **JACOB LEWIS,** | : | |
| | : | |
| Defendant. | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Lewis to 60 days' home detention, 36 months' probation, 60 hours of community service, and $500 restitution.

**I.      Introduction**

The defendant, Jacob Lewis, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Lewis pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of 60 days' home detention, 36 months' probation, and 60 hours of community service is appropriate in this case because Lewis: (1) planned his trip to Washington, D.C. and the Capitol. It was not a spontaneous decision; (2) entered knowing the building had been breached; (3) has expressed no

remorse for his actions; (4) but was inside the Capitol for a brief period of time in relation to many other rioters and did not engage or encourage violence or property destruction.

The Court must also consider that Lewis's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Lewis's participation in a riot that actually succeeded in halting the Congressional certification combined with the defendant's directing of others and his lack of remorse warrant a sentence more restrictive than probation without home detention.

## II.   Factual and Procedural Background

### *The January 6, 2021, Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 30 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### *Jacob Lewis's Role in the January 6, 2021, Attack on the Capitol*

Lewis traveled from his home in California to be in Washington, D.C. on January 6, 2021. On January 6, he made his way to the U.S. Capitol and at approximately 2:55 p.m., entered the building through the Senate Wing Doors.  The doors had been breached at approximately 2:13 p.m.

He then walked past the House Wing Doors, through the Hall of Columns, through the Crypt, and then exited the building out of the South Door at approximately 3:03 p.m.

*The Charges and Plea Agreement*

On January 22, 2021, Lewis was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). He was arrested on January 27, 2021. On February 9, 2021, Lewis was charged in a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On January 6, 2022, he pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. By plea agreement, Lewis agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Lewis now faces sentencing on a single count of violating 40 U.S.C.  § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Lewis faces up to six months of imprisonment and a fine of up to $5,000. Lewis must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C.  § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, §

3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of home detention.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, in determining a fair and just sentence, this Court should assess Lewis's conduct against a spectrum of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated

sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Lewis personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on Lewis' part is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Lewis from most other misdemeanor defendants.

On January 6, 2021, at approximately 2:55 p.m., Lewis entered the Capitol Building through the Senate Wing Doors. He walked into an area with hundreds of people and did not enter through any security screening process. Lewis is the person circled in red in the Capitol surveillance photographs below. (See Figures 1 and 2 below).



Figure 1



Figure 2

He then made his way to the Crypt area (Figure 3 below):



Figure 3

At about 3:00 p.m., he went through the Memorial Door (Figure 4 below):



Figure 4

He walked past the House Wing Door (See Figure 5 below):



Figure 5

Lewis travelled through the Hall of Columns at approximately 3:02 p.m. (See Figure 6 below):



Figure 6

Moments later, he left the building through the South Door Vestibule (See Figure 7 below):



Figure 7

On January 11, 2021, the FBI received a tip from an individual that knows Lewis.  The tipster indicated during a conversation he had with Lewis in December 2020, that Lewis told him to "watch what happens on January 6."  The tipster then saw photos of the US Capitol from January 6, 2021, on Lewis's Instagram account.  In a phone call after the photos were posted, Lewis told the tipster, in reference to President-elect Biden and Vice President-elect Harris, "None of them are going to make it to the White House. Watch what's going to happen in the next ten days."

On January 15, 2021, Lewis was interviewed by agents of the FBI.  He admitted he traveled from California to Washington, D.C., from January 4 to 7 to attend President Trump's rally on January 6.  He was dressed in a black jacket, red beanie hat, and blue jeans.  He admitted following the rally, walking towards the Capitol, and entering the building with a number of people after it had been breached.  He says he was "escorted" by the police into the building. He then said the protestors pushed their way into the Capitol building shortly after he arrived. He further admitted to posting a video of the Capitol grounds on January 6, 2021, on Instagram and provided agents with access to view his account.  Lewis told the agents that because of what happened on January 6, he did not think the Inauguration would happen on January 20 and when it did happen, it would not go smoothly.

Through his counsel, Lewis told prosecutors early on that this matter would not be a trial. To date, he has expressed no remorse for his involvement in the January 6, 2021, siege on the Capitol.

Accordingly, the nature and the circumstances of this offense establish the need for a sentence of home detention in this matter.

**B.  Lewis' History and Characteristics**

As set forth in the PSR, Jacob Lewis has a reckless driving conviction from 2008.  If this matter were one in which the United States Sentencing Guidelines applied, he would be a Criminal History Category I. Lewis is 38 years old and has been gainfully employed for 20 years.

While Lewis was only in the Capitol for a short time, his presence contributed to the throngs of people that overwhelmed the law enforcement presence.  His December statement to a friend shows his appearance in Washington and at the Capitol was not a spontaneous decision. Further, his claim that he was escorted by the police while inside is belied by the evidence.  While there are certainly law enforcement officers present at locations in the Capitol where Lewis appears, the officers are far outnumbered by the rioters.  Further, there is zero evidence that Lewis was "escorted" by any of them and while he did notify the government of his intent to plead guilty early, he has expressed no remorse at all for his actions.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[1] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy

---

[1] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

and that jail time is usually -- should be expected") (statement of Judge Hogan).  Although this specific factor weighs in favor of incarceration, the other factors identified in this memorandum favor a more lenient sentence.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have

recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters— especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

On one hand, Lewis knew that his entry into the Capitol was unlawful, and it was evident to him and anyone else at the Capitol that the situation outside and inside the building had devolved into a riot.  On the other hand, his conduct falls toward the low end of the spectrum of criminality that occurred on January 6.

As discussed above, Lewis's actions at the Capitol were limited, and he did cooperate with law enforcement when he was interviewed by the FBI.  Although he has not expressed any remorse for his conduct, he did not incite people while he was there. Nor did he post any incendiary remarks on social media during or after January 6.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with

Congress.[2] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not necessarily become the default.[3] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth); *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (Statement of Judge Friedman).

The government and the sentencing courts have drawn meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed,

---

[2] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[3] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

Lewis has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in the Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*,

483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the sentences imposed in the following cases.  Each defendant pled guilty, as did Lewis, to 40 U.S.C. 5104(e)(2)(G).

In *United States v. Caleb Jones*, (1-21-CR-321 (JEB)), the government recommended a sentence of 90 days home confinement and Judge Boasberg sentenced Jones to 60 days.  Jones was in the Capitol for approximately 15 minutes, took videos while inside, and scaled a wall to gain access to gain access to the building.  Lewis walked in with the throngs of people, which would distinguish his case from Jones's.

In *United States v. Kostolsky*, (1-21-CR-197 (DLF)), Kostolsky scaled a wall to get to the Upper West Terrace after he saw others doing the same, entered the Capitol through the Parliamentarian doors breached by rioters only 30 seconds earlier, remained inside for approximately 10-13 seconds but left after Capitol police yelled "get out", proudly texted friends that he scaled the wall, got tear gassed, "caught a rubber bullet",  first denied entering the Capitol when talking to the FBI, then later admitted he went in; and he deleted videos from  his telephone. The government recommended 30 days' incarceration and Judge Friedrich sentenced him to 30 days of home confinement.

In *United States v. Michael Stepakoff*, (1-21-CR-96), Judge Contreras sentenced the defendant to 60 days home confinement. The government had recommended 14 days imprisonment. Stepakoff claimed he did not know he couldn't be in the Capitol despite being a lawyer who practiced criminal law for over a decade. He entered the Capitol as others climbed through broken windows around him. He also spread misinformation on social media glorifying the events of January 6, 2021.

In *United States v. John Wilkerson, IV*, (1-21-CR-302 (CRC)), Wilkerson was in the Capitol for approximately 20 to 25 minutes. He had limited social media posts after January 6 indicating a lack of remorse. The government requested a sentence of two months' home confinement and 36 months' probation. This court sentenced him to 36 months' probation.

In *United States v. Sizer*, (1-21-CR-621 (CRC)), the government recommended a sentence of two months home confinement and 36 months' probation. Sizer was inside the Capitol for approximately two minutes. She lied to the FBI about going in and she did not have any social media posts or a criminal history. This court sentenced her to 12 months' probation and a $5,000 fine.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence

differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Jacob Lewis to 60 days' home confinement, 36 months' probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

<div style="margin-left: 40%;">

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: */s/ Susan T. Lehr*
SUSAN T. LEHR
Assistant United States Attorney
Ne Bar No. 19248
District of Columbia
Capitol Riot Detailee
1620 Dodge Street, #1400
Omaha, NE  68102
Telephone: 402-661-3715
Email: susan.lehr@usdoj.gov

</div>